UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**BREE OMENE**,

        Plaintiff,

        v.

**ACCENTURE FEDERAL SERVICES**,

        Defendant.

Case No. 1:18-cv-02414 (TNM)

## MEMORANDUM OPINION

Bree Omene has sued her former employer, Accenture Federal Services ("Accenture"), alleging that it subjected her to unlawful discrimination, retaliation, and harassment. Accenture moves to dismiss Ms. Omene's Second Amended Complaint. As Ms. Omene largely fails to rebut or even address Accenture's arguments, the Court will grant Accenture's motion and dismiss Ms. Omene's Second Amended Complaint. But the Court will grant Ms. Omene leave to file another amended complaint.

### I.

Accenture provides management and technology services to government clients. Second Am. Compl. ¶ 5, ECF No. 32. Ms. Omene began working as a software developer specialist with Accenture in late 2014, and in June 2015, Accenture assigned her to a project for the U.S. Postal Service. *Id.* ¶ 11. Johnny Wen was Ms. Omene's manager on the Postal Service project. *Id.* ¶ 12.

According to Ms. Omene, working under Mr. Wen was unpleasant, and "on multiple occasions," he "expressed a desire to remove [her] from his team." *Id.* ¶¶ 14, 16. Ms. Omene is African American, and Mr. Wen, who is Asian, allegedly wanted to build an all-Asian team. *Id.*

¶¶ 12–13, 15. Mr. Wen allegedly also complained that Ms. Omene, who was around 50 at the time, was too old and was not a man. *Id.* ¶ 15, 17. According to Ms. Omene, Mr. Wen reassigned her projects "to younger team members who were . . . 30 and under, male, and Asian." *Id.* ¶ 17. Ms. Omene complained to Human Resources, but they allegedly took no action. *Id.* ¶ 21. Accenture eventually removed Ms. Omene from the Postal Service project—allegedly at Mr. Wen's direction—and reassigned her to a new project for "PCORI." *Id.* ¶¶ 17, 27, 29.

But she had a bad experience there, too. She alleges that her new supervisor subjected her to "daily abuse, intimidation, and harassment." *Id.* ¶ 30. A different PCORI team member, Kim Vay, allegedly "supervised and scrutinized [Ms. Omene's] work unlike any other team members," "yelled at and belittled [Ms. Omene] in the presence of other employees," "assigned deadlines for tasks that she knew were impossible" for Ms. Omene to complete, and took other unspecified "steps to ensure that [Ms. Omene] failed in [her] position." *Id.* ¶ 31. Ms. Vay allegedly wanted to replace Ms. Omene. *Id.* ¶ 35. According to Ms. Omene, when she asked why Ms. Vay wanted to replace her, "[Ms. Vay] had no answer other than 'because I can.'" *Id.* ¶ 36. Ms. Omene alleges that she again complained to Human Resources to no avail. *Id.* ¶¶ 40–41, 43.

Ms. Omene alleges that the stress from work took a toll on her health. *Id.* ¶ 44. She sought treatment for stress and anxiety, and her doctor placed her on disability leave. *Id.* ¶¶ 44–45. Her doctor confirmed, she claims, that she suffered from "neck stiffness . . . and pain in her arm [and] neck." *Id.* ¶ 46. In November 2016, Ms. Omene's doctor allegedly "updated [Accenture] with information concerning [Mr. Omene's] medical condition." *Id.* ¶ 45.

While Ms. Omene was "out on disability" in November 2016, Accenture terminated her. *Id.* ¶ 49. She filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") exactly 300 days later, alleging that Accenture terminated her because of her "age, race, national origin, and disability, retaliation, and color." *Id.* ¶ 7. Ninety days after the EEOC issued a Notice of Right-to-Sue, Ms. Omene filed this action. *Id.* ¶ 8.

Ms. Omene raises many claims for relief under six counts. First, she raises an age discrimination claim under the Age Discrimination in Employment Act of 1967 ("ADEA"). *Id.* ¶¶ 51–57. Second, she claims discrimination based on race, gender, color, and national origin under Title VII of the Civil Rights Act of 1964. *Id.* ¶¶ 58–64. Third, she claims discrimination based on her disability under the Americans with Disabilities Act ("ADA"). *Id.* ¶¶ 65–74. Fourth, she claims that Accenture interfered with her rights under the Family and Medical Leave Act ("FMLA") and its local counterpart ("DCFMLA"). *Id.* ¶¶ 75–80.[1] Fifth, she claims Accenture retaliated against her for exercising her rights under the FMLA and DCFMLA. *Id.* ¶¶ 81–86. Finally, she claims that Accenture wrongfully terminated her employment. *Id.* ¶¶ 87–90. Accenture has moved to dismiss all six counts. *See* Def.'s Mot. to Dismiss, ECF No. 33; Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), ECF No. 34.[2]

**II.**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." To survive a motion to

---

[1] "Under the FMLA, a plaintiff may state: (1) an interference claim under § 2615(a)(1), alleging that her employer has restrained, denied, or interfered with her substantive rights under the Act, and/or (2) a retaliation claim under § 2615(a)(2), alleging that her employer has taken adverse action against her because she took leave or engaged in activity protected by the Act, such as by filing a complaint." *Alford v. Providence Hosp.*, 945 F. Supp. 2d 98, 104 (D.D.C. 2013), *aff'd*, 561 F. App'x 13 (D.C. Cir. 2014). Count V explicitly specifies that it is a claim for retaliation, so the Court considers Count IV to be a claim for interference.

[2] The Court has jurisdiction over Ms. Omene's claims under 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1367, supplemental jurisdiction.

3

dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet the "plausibility standard" and survive dismissal, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating a motion to dismiss, courts must "treat the complaint's factual allegations as true . . . and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up). But courts need not accept as true legal conclusions couched as factual allegations or draw inferences unsupported by the facts set forth in the complaint. *Grant v. Ent. Cruises, Inc.*, 282 F. Supp. 3d 114, 116 (D.D.C. 2017). Ultimately, applying the motion to dismiss standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III.

Ms. Omene has conceded the claims in her Second Amended Complaint by failing to address Accenture's arguments for dismissal. First, Ms. Omene has conceded her claim for wrongful termination. Accenture persuasively argued that Ms. Omene failed to allege a connection between her termination and a public policy not already protected by another statute, as required to state a claim for wrongful termination in the District of Columbia. *See* Def.'s Mem. at 23–24 (citing *Jones v. D.C. Water & Sewer Auth.*, 943 F. Supp. 2d 90, 94 (D.D.C. 2013)). Ms. Omene did not respond. *See generally* Pl.'s Opp'n, ECF No. 35. Nowhere in her Opposition does she discuss "wrong termination" or any public policy underlying her claims. *Id.*

If a party opposes a motion but addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded. *Hopkins v. Women's Div., Gen. Bd. of Glob.*

4

*Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004).  More, "[i]t is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones . . . . [A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace."  *Schneider v. Kissinger*, 412 F.3d 190, 200 (D.C. Cir. 2005) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).  The Court will therefore treat Accenture's arguments as conceded, and Ms. Omene's wrongful termination claim (Count VI) will be dismissed.

Ms. Omene conceded her claim under the ADA, too.  It is not clear from the Second Amended Complaint whether Ms. Omene's ADA claim is for intentional discrimination or for failure to accommodate.  Accenture argued that the Second Amended Complaint fails to state a claim under either theory.  Def.'s Mem. at 16–18.  For example, Accenture highlighted that the Second Amended Complaint lacked facts showing that Ms. Omene was a qualified individual under the ADA and that nowhere does she allege that she requested a reasonable accommodation.  *Id.*  Again, Ms. Omene chose not to respond.  *See generally* Pl.'s Opp'n.  She does not discuss her "disability" or whether she is a "qualified individual," nor does she suggest that she requested a "reasonable accommodation."  *Id.*  In fact, those terms do not appear in her Opposition.  *Id.*  So Accenture's arguments are conceded, *Hopkins*, 284 F. Supp. 2d at 25, and Ms. Omene's ADA claim (Count III) will be dismissed.

So too with Ms. Omene's claims under the FMLA and DCFMLA.  To state a claim under for interference, Ms. Omene must allege facts showing, among other things, that she gave Accenture adequate notice of her intention to take FMLA leave and Accenture denied or otherwise interfered with her right to take leave.  *See Hodges v. District of Columbia*, 959 F.

Supp. 2d 148, 155 (D.D.C. 2013). And to state a claim for retaliation, Ms. Omene must allege that she engaged in activity protected by the statutes, among other things. *See Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161–62 (D.C. Cir. 2015).

As Accenture argued in its Motion to Dismiss, Def.'s Mem. at 18–21, the Second Amended Complaint lacks these necessary allegations. Again Ms. Omene did not respond to Accenture's arguments. *See generally* Pl.'s Opp'n. Her Opposition does not discuss, or even mention, the FMLA/DCFMLA, any alleged interference or activity protected by those statutes, or anything of the kind. The Court therefore treats Accenture's arguments as conceded, *Hopkins*, 284 F. Supp. 2d at 25, and Counts IV and V will be dismissed.

Ms. Omene has also conceded her gender and national origin discrimination claims under Title VII. As Accenture points out, nowhere in her Second Amended Complaint does Ms. Omene state her national origin, and so nothing in the Second Amended Complaint ties her national origin to an adverse employment action. Def.'s Mem. at 13–14. More, Accenture argued that Ms. Omene failed to exhaust her administrative remedies for her gender discrimination claim, noting that she did not allege sex discrimination in her EEOC complaint. *Id.* at 14–15. Yet again, Ms. Omene did not address these arguments. *See generally* Pl.'s Opp'n. In fact, the words "gender," "sex," and "national origin" make no appearance in her Opposition. *Id.* The Court therefore treats Accenture's arguments as conceded, *Hopkins*, 284 F. Supp. 2d at 25, and the Court will dismiss Ms. Omene's gender and national origin discrimination claims under Title VII.

So what is left of Ms. Omene's claims? Ms. Omene defends only her age discrimination claim under the ADEA (Count I) and her claim for race discrimination under Title VII (Count II). She also responds to some of Accenture's arguments about Title VII retaliation and Title VII

6

hostile work environment claims—although neither of those claims are explicitly enumerated in the Second Amended Complaint. But the Court will dismiss these claims, too.

For her discrimination and retaliation claims, Ms. Omene must allege that she suffered an adverse employment action. *See, e.g.*, *Baloch v. Kempthorne*, 550 F.3d 1191, 1196, 1198 (D.C. Cir. 2008).[3] For this, Ms. Omene relies on her transfer to the PCORI project. Pl.'s Opp'n at 4–6. But she has not alleged facts showing that her transfer was an adverse employment action, and any claims arising from her transfer are time-barred.

In the discrimination context, adverse actions arise from "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a change in benefits." *Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011). So typically, "[a]n employment decision does not rise to the level of an actional adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." *Walden v. Patient-Centered Outcomes Research Inst.*, 304 F. Supp. 3d 123, 133–34 (D.D.C. 2018) (cleaned up). While Ms. Omene alleges that Accenture reassigned her to the PCORI project, nowhere does she allege that her reassignment involved significantly different responsibilities, a change in benefits, or a tangible change in the duties or working conditions.

She certainly did not enjoy her time on the PCORI project. But "[n]ot everything that makes an employee unhappy is an actionable adverse action." *Broderick v. Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006). And "purely subjective injuries, such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (cleaned up). Perhaps the transfer did rise to the

---

[3] The standard for what qualifies as an adverse employment action for retaliation is slightly different from the standard for discrimination. *See Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010). But, as discussed below, that distinction does not matter here because Ms. Omene's claims related to her transfer are untimely.

level of a material employment disadvantage. But that is not clear from this Amended Complaint.

In any event, claims arising from Ms. Omene's transfer are time-barred. Under Title VII and the ADEA, a plaintiff must exhaust her administrative remedies by filing an EEOC charge outlining her allegations within 300 days of the allegedly discriminatory or retaliatory act. *See* 42 U.S.C. § 2000e-5(e) (Title VII); 29 U.S.C. § 626(d)(1) ("ADEA"). Accenture removed Ms. Omene from the Postal Service project in January 2016 and placed her on the PCORI project in March 2016. Second Am. Compl. ¶¶ 27, 29. But Ms. Omene did not file her EEOC charge until September 2017, well past the 300-day deadline. *Id.* ¶ 7.

Ms. Omene's termination, however, certainly is an adverse employment action. *See Baird*, 662 F.3d at 1248. Even so, her discrimination claims under Title VII and ADEA fail because she has not plausibly alleged that Accenture terminated her because of her race or age. According to Ms. Omene, her time on the PCORI team was unpleasant: her supervisor allegedly yelled at her, assigned her unreasonable tasks, and belittled her in front of others. Second Am. Compl. ¶ 31. But Ms. Omene does not plausibly tie Ms. Vay's comments to any protected characteristic, nor does she plausibly allege that her race or age were motivating factors behind her termination. True, Ms. Omene alleges that Mr. Wen sought to remove her from the Postal Service team based, in part, on her race. *Id.* ¶¶ 14–17. But she does not allege that Ms. Vay played any role in her ultimate termination from a different project over eight months later.

The two elements of a discrimination claim are that the plaintiff (1) suffered an adverse employment action (2) because of her protected status. *Baloch*, 550 F.3d at 1196. Thus, Ms. Omene's failure to tie her termination plausibly to her protected characteristics is fatal. *See, e.g., Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002) ("To state a prima facie case of

disparate treatment discrimination under [Title VII], the plaintiff must establish that . . . the [adverse] action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class).").

Accenture raised all these points in its Motion to Dismiss. Def.'s Mem. at 11–13. But Ms. Omene failed to address Accenture's arguments that she had not linked her protected characteristics to her termination in November 2016. Indeed, she never mentioned her November 2016 termination in her opposition, focusing instead on her transfer to the PCORI project. *See generally* Pl.'s Opp'n. Thus, the Court will again treat Accenture's meritorious arguments as conceded, *Hopkins*, 284 F. Supp. 2d at 25, and Ms. Omene's discrimination claims (Counts I and II) will be dismissed.

For similar reasons, any retaliation claims under Title VII or the ADEA also fail.[4] The Second Amended Complaint does not allege that Accenture terminated Ms. Omene in retaliation for engaging in activity protected by Title VII or the ADEA. And for a retaliation claim to survive dismissal, a plaintiff's complaint must contain enough factual matter, accepted as true, to establish plausibly a causal link between protected activity and an adverse employment action. *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Library of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013).

Accenture forcefully argued that Ms. Omene had failed to plausibly allege a causal link between any protected activity and her termination, and any protected activity did not occur close enough to her termination to give rise to an inference of retaliation. *See* Def.'s Mem. at 22–23. But Ms. Omene ignored those arguments in favor of arguing that there was a temporal

---

[4] It is not at all clear that Ms. Omene intended to raise ADEA or Title VII retaliation claims in her Second Amended Complaint. The original Complaint contained a separate count for retaliation, *see* Compl. ¶¶ 36–39, that is not in the Second Amended Complaint. Indeed, the Second Amended Complaint references retaliation only in the context of the FMLA and DCFMLA. *See* Second Am. Compl. at 13.

9

link between the protected activity and her transfer to PCORI. So the Court will treat Accenture's meritorious arguments as conceded, *Hopkins*, 284 F. Supp. 2d at 25, and any retaliation claims (Counts I and II) will be dismissed.

Ms. Omene alleges that she complained about Ms. Vay leading up to her termination, but as already discussed, Ms. Omene has not plausibly tied Ms. Vay's conduct to any protected characteristic. More, the specific content of her complaints is not alleged, so the Court cannot reasonably infer whether those complaints qualify as protected activity. More still, the last explicitly alleged complaint occurred in June 2016, and that is well outside the typical three-month window allowed in this District for showing causation based on temporal proximity alone. *See McIntyre v. Peters*, 460 F. Supp. 2d 125, 133 (D.D.C. 2006). And while Ms. Omene alleges that some of her complaints occurred after June 2016, she specifies no dates that would allow the Court to consider whether there is sufficient temporal proximity to her termination to infer a causal connection.

Finally, Ms. Omene's Title VII hostile work environment claim will also be dismissed.[5] Accenture offered four distinct arguments for why Ms. Omene's Title VII harassment should be dismissed. *First*, it argued that she failed to allege conduct severe or pervasive enough to create a hostile work environment based on her race, color, gender, or national origin. Def.'s Mem. at 25–26. *Second*, according to Accenture, Ms. Omene failed to allege facts connecting the purported "harassment" to her protected characteristics. *Id.* at 26. *Third*, she failed to exhaust her administrative remedies because she did not sufficiently raise the issue in her EEOC complaint. *Id.* at 26–27. *Finally*, Accenture argued that any harassment claim is time-barred

---

[5] It is far from clear that Ms. Omene intended to bring such a claim, but "it appears from [her] opposition to Defendant's . . . motion to dismiss that [she] wishes to assert a hostile work environment claim now." *Bing v. Architect of Capitol*, 300 F. Supp. 3d 53, 59 (D.D.C. 2017).

because Ms. Omene failed to file her EEOC charge within 300 days of any instance of harassment. *Id.* at 27–28.

Ms. Omene addressed only one of these arguments: "The conduct Plaintiff has alleged is severe and pervasive enough to constitute a hostile work environment." Pl.'s Opp'n at 5. The Court will treat Accenture's three other arguments as conceded. *Hopkins*, 284 F. Supp. 2d at 25. That alone is grounds for dismissal. *See, e.g.*, *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) ("A Title VII lawsuit following the EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." (cleaned up)).

More, Ms. Omene conceded that "courts in this District have regularly dismissed hostile work environment allegations where the Plaintiff has alleged that she was subjected to yelling or criticism," like she alleges here. Pl.'s Opp'n at 5–6. She argues, however, that her case is different because she complained to the Human Resources Department to no avail. *Id.* at 6. But while her complaints are relevant to whether Accenture "knew or should have known about the harassment, but nonetheless failed to take steps to prevent it," they are less salient to the separate issue of whether "the harassment was severe to a degree which affected a term, condition, or privilege of employment," *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 189 (D.D.C. 2012). Ms. Omene has cited no authority suggesting otherwise. Thus, because Ms. Omene has failed to address the bulk of Accenture's arguments or allege specific facts showing severe or pervasive harassment, her hostile work environment claim will be dismissed.

\* \* \*

While this is Ms. Omene's third complaint and Accenture has reasonable arguments for dismissal with prejudice, the Court finds that it is appropriate to grant her one more bite at the

apple.  Ms. Omene filed her First Amended Complaint while she was proceeding *pro se*.  And she filed her Second Amended Complaint while she was recovering from surgery and shortly after she retained counsel, limiting counsel's ability to get up to speed.  *See* Pl.'s Mot. for Extension, ECF No. 26.  More, while Ms. Omene did not explicitly raise ADEA or Title VII retaliation or hostile work environment counts in her Second Amended Complaint, it is apparent from the parties' briefing that she does intend to include such claims.  She should have an opportunity flesh them out.  *See Bing v. Architect of the Capitol*, 300 F. Supp. 3d 53, 58–59 (D.D.C. 2017).  Thus, the Court will grant Ms. Omene leave for 30 days to amend her complaint.

**IV.**

For these reasons, the Defendant's Motion to Dismiss will be granted and Ms. Omene's Second Amended Complaint will be dismissed without prejudice.  The Court, however, will grant Ms. Omene leave to file a Third Amended Complaint.  A separate order will issue.

Dated: September 30, 2018                    TREVOR N. McFADDEN, U.S.D.J.