**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BREE OMENE** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No.: 1:18-cv-02414-TNM |
| | ) |
| **ACCENTURE FEDERAL SERVICES,** | ) |
| | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) **Date: October 30, 2019** |

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

Plaintiff, Bree Omene, by and through undersigned counsel, hereby submits this Third Amended Complaint against Defendant, Accenture Federal Services, alleging the following causes of action:

**NATURE OF THE CASE**

1. Plaintiff brings this action for relief from Defendant's discriminatory and retaliatory conduct based on Plaintiff's age, race, national origin and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.;* and the Civil Rights Act of 1991, 42 U.S.C. § 1981 a, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, and the Americans with Disabilities Act, as amended 42 U.S.C. § 12101 *et seq.*

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this complaint pursuant 28 U.S.C. § 1331 as it asserts a claim arising under the laws of the United States, specifically Title VII of the Civil RightsAct of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.;* and the Civil Rights

Act of 1991, 42 U.S.C. § 1981 a, the Age Discrimination in Employment Act, of 1967 and the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.*

3. Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391 because Defendant operates within the District of Columbia and the unlawful employment practices were committed in the District of Columbia.

## PARTIES

4. Plaintiff, a former employee of Defendant, currently and at all times relevant herein, resides in the State of Virginia.

5. Plaintiff's gender is female.

6. Plaintiff's race is African-American.

7. Plaintiff's national origin is from the United Kingdom.

8. Defendant Accenture is a wholly-owned subsidiary of Accenture, LLP. It operates in the District of Columbia and performs services on behalf of the federal government in the District of Columbia.

## MATERIAL FACTS

9. Plaintiff has exhausted her administrative remedies.

10. On September 11, 2017, Plaintiff filed a charge of Discrimination with the EEOC alleging discrimination based on her age, race, national origin, and disability, retaliation, and color.

11. On July 24, 2018, the EEOC issued a Notice of Right-to-Sue which provided Plaintiff with the right to file a Complaint with this Court within 90 days of receipt of the Notice.

12. Plaintiff hereby timely files this action within 90 days of receipt of the EEOC's Notice of Right-to-Sue having initiated lawsuit on Oct 24, 2018 and thus brings this action for discrimination based on her age, gender, race, national origin and disability.

13. On May 22, 2019, Plaintiff filed an Amended Complaint *pro se* in this Court seeking redress for employment discrimination based on wrongful termination, age discrimination, gender discrimination, disability discrimination, and retaliation. On June 7, 2019, Defendant filed its Motion to Dismiss all of Plaintiff's claims. Plaintiff filed her Motion to Amend her Amended Complaint on July 27, 2019.

14. On December 4, 2014, Plaintiff was hired by Defendant as a Software Developer Specialist and assigned to work on a project, first on the CMS project then reassigned to the United States Postal Service ("USPS") project on June 11, 2015.

15. During the relevant time period, Plaintiff's manager was Johnny Wen, an Asian male.

16. Plaintiff's race is a Black/African-American.

17. Plaintiff's gender is Female.

18. Plaintiff's national origin is from the United Kingdom.

19. Although Plaintiff's work on the project was very satisfactory, Mr. Wen expressed a desire to remove Plaintiff from his team on multiple occasions.

20. Mr. Wen often said that Plaintiff is not male, not Asian, certainly not young and that he wanted to 'build' an 'Asian team'.

21. Mr. Wen, on numerous occasions, made negative remarks about the way Plaintiff spoke, what she ate and tried to frustrate her to the point that she would self-terminate her employment with Defendant.

22. Mr. Wen removed Plaintiff from the USPS project, expressing the belief that Plaintiff was too old, and reassigned Plaintiff's projects to younger team members who were ages 30 and under, male, and Asian.

23. Plaintiff was treated differently by Mr. Wen, which included being deprived of certain rights that were given to the younger Asian team members.

24. Plaintiff experienced Mr. Wen making multiple negative comments on numerous occasions. This included such things as calling her 'old'; telling Plaintiff that 'you should retire'; and stating that there was 'no special care for seniors here'.

25. By contrast, Plaintiff observed Mr. Wen regularly socializing with other team members, having lunch with other team members, discussing future of projects, assigning them group projects with favorable return times, deciding what portions of programs to code or work on, and privately pointing out programming or run errors for them to correct.

26. Plaintiff complained about the names she was called and the negative treatment she received but Defendant did nothing to stop the situation.

27. Plaintiff continued to be isolated, discriminated against, harassed and made uncomfortable in the workplace.

28. Plaintiff was 51 years old at the time Mr. Wen had her removed from the USPS project.

29. Mr. Wen also indicated that the USPS team should be comprised only of Asians.

30. Mr. Wen coined a name for his group – the "Asian team".

31. Johnny Wen constantly talked about how happy he was saying that as of December 2015, he had already staffed his team with young Asians.

32. After Mr. Wen removed Plaintiff from the USPS project, Defendant put a lot of pressure on Plaintiff, threatening her stay with Accenture in January 2016 by trying to smear her personal and professional reputation in order to immediately terminate her.

33. In January 2016, Defendant discouraged Plaintiff from ever telling anybody that Mr. Wen called his team the "Asian Team".

34. Defendant tried getting rid of Plaintiff by any means, which included fabricating unfounded lies. Defendant subjected Plaintiff to intense interviews with managers and supervisors as if she were a new, prospective employee or an unknown entity. This was an unusual practice and treatment of a known employee transferring or seeking to transfer from one project to another within the company. Plaintiff was eventually assigned to a new project known as PCORI, which she started working on March 7, 2016.

35. Johnny Wen later accused Plaintiff of fraudulently billing hours for USPS, after Plaintiff left the USPS project.

36. However, Human Resources determined that Wen's accusation was false.

37. Nonetheless, removing Plaintiff from the USPS position and placing her on the PCORI project was an adverse employment action because the tangible working duties of the PCORI project were significantly different from those of the USPS position.

38. The tangible working duties of the USPS position involved working on Core Java and Java Platform.

39. Plaintiff had over 8 years' experience working with Java.

40. By contrast, tangible working duties for the PCORI project involved working on a completely different platform and technology called Salesforce.

41. Plaintiff was also unable to work from home on the PCORI project.

42. By contrast, Plaintiff was able to work from home during the USPS project.

43. Plaintiff was often assigned unreasonable hourly deadlines for large projects on the PCORI project, while her peers were not subjected to such scrutiny and pressure.

44. Although Plaintiffs work was very well executed and accomplished, Plaintiff was subjected to daily abuse, intimidation and harassment by her new supervisor/project manager, Basak Gazioglu.

45. Kim supervised and scrutinized Plaintiffs work unlike any other team members, yelled at and belittled Plaintiff in the presence of other employees, assigned deadlines for tasks that she knew were impossible for a group to complete in a week, let alone one person, and took other steps to ensure Plaintiff failed in the position.

46. Plaintiff was constantly badgered and insulted by her peer Kalyan Vuyyuru, but whenever Plaintiff reported him to Kim Vay or Basak Gazioglu, Plaintiff was told to tolerate him because in his culture, men do not obey, respect, or listen to women.

47. Specifically during or around March of 2016, Plaintiff observed Kalyan Vuyyuru attempting to get a cab to ride home from working late at the Accenture worksite. At the time, Kalyan's manager informed Kalyan that the company would pay for Kalyan's cab ride from DC to his home in Virginia.

48. Plaintiff, realizing that she was also headed to Virginia, asked whether she should join Kalyan in the cab ride since they were headed to the same place and it was dark outside.

49. Kalyan expressed that he did not want Plaintiff in the cab because she "was not [his] class".

50. Plaintiff reported this comment to her supervisor, who responded by claiming "oh well, it's the Indian culture."

51. Plaintiff was frustrated by this response, and the incident overall – where Accenture treated Plaintiff and Kalyan differently despite Plaintiff protesting the behavior.

52. Up until July 2016, Basak Gazioglu continued to favor Kalyan Vuyyuru by telling Plaintiff that she misunderstood him after she reported him again for being rude and screaming at Plaintiff in public.

53. Plaintiff was ultimately terminated while on disability on November 15, 2016. Plaintiff was not made aware of her termination or given notice - written or oral - until she received an email from Defendant on November 17, 2016 while she was recovering from injuries inflicted on her by Defendant.

54. On a few occasions, Ms. Kim Vay had told Plaintiff that she intended to replace her.

55. When Plaintiff questioned "why?", Ms. Kim Vay had no answers other than "because I can."

56. Ms. Vay and Gazioglu ultimately hired a man, possibly of Indian descent, to replace Plaintiff.

57. Plaintiff's peers on the PCORI project were not African-American or Black, and were not over 50 years of age.

58. Ms. Vay and Gazioglu treated Plaintiff's peers on the PCORI project more favorably than Plaintiff while publicly ridiculing Plaintiff at every turn.

59. On June 15, 2016 while working on the PCORI project, Plaintiff reported the hostility, harassment, and discrimination to Human Resources and did so repeatedly thereafter, but to no avail.

60. The case was assigned to Human Resources representative Beatrice Devlin, who exhibited bias in January 2016 when she worked on Plaintiffs case with USPS.

61. Beatrice told Johnny Wen, Plaintiffs former manager "don't worry, we have our way to get her out" in January 2016 because he insisted on getting Plaintiff off his USPS team and wanted Plaintiff out of Accenture immediately.

62. Beatrice Devlin again, repeated similar statements to Basak Gazioglu in July 2016 when she was discussing Plaintiffs complaint.

63. As a direct result of the stress and anxiety suffered from workplace harassment and discrimination that negatively impacted Plaintiff, Plaintiff sought medical treatment and was placed on disability leave by her doctor.

64. Plaintiff's doctor contacted Defendant on or about July 6, 2016, informing the company that Plaintiff was sick, under the doctor's care, and needed to rest until well enough to work again.

65. Defendant's responded to doctor's email by approving of Plaintiff taking disability leave during or around June of 2016.

66. Despite Plaintiff being away on protected leave, Defendant disregarded Plaintiff's doctor's recommendations and continually burdened Plaintiff with work, deadlines, emails, and phone calls which exacerbated her stress.

67. In November of 2016, Plaintiffs doctor updated Defendant with information concerning her medical condition and disability.

68. Plaintiff's doctor confirmed that she suffered from neck stiffness, heads and pain in her arm, neck and anxiety.

69. Plaintiff's doctor further informed her that her ailments were the direct result of stress that Plaintiff was subjected to while working for Defendant.

70. Plaintiff's doctor indicated that Plaintiff's anticipated release date from disability would be January 3,2017.

71. Following the update and while out on disability, Defendant terminated Plaintiffs employment on or around November 15, 2016.

72. Plaintiff was not allowed to retrieve her personal belongings left in the office while she was on disability nor were they mailed or messengered to Plaintiff by Defendant.

73. On September 11, 2017, Plaintiff filed a Complaint of Discrimination against Accenture with the EEOC.

74. On June 12, 2018, the EEOC responded asking Plaintiff to clarify her allegations.

75. On July 9, 2019, Plaintiff responded to EEOC's request via her counsel at the time, to further illustrate the EEOC allegations.

76. Specifically, Plaintiff's July 2018 response asserted that "Omene has asserted an age and race claim, which does not appear to have been considered by the Commission."

77. Plaintiff's July 2018 response also asserted to EEOC that Plaintiff was alleging Defendant discriminated against her on the bases of race and age in the form of hostile comments and disparate treatment in the terms and conditions of her employment.

78. Plaintiff's July 2018 response to EEOC further stated that Plaintiff alleged she was subjected to retaliation for complaining about disparate treatment and discrimination to Human Resources.

# CLAIMS

## COUNT I.

### Age Discrimination in Employment Act of 1967,

29 U.S.C. §§ 621-634.

(Employment Discrimination on the Basis of Age)

79. Plaintiff incorporates by reference paragraphs ¶1-78.

80. Plaintiff was at least 40 years of age at the time of her employment and termination because she was born in 1964 and, as such, is a member of a protected class.

81. Plaintiff was treated differently and subjected to disparate treatment at her job by Defendant on account of her age in comparison to younger employees that Defendant employed.

82. Other similarly situated younger, male, Asian employees were treated more favorably than Plaintiff in terms and conditions of employment.

83. Defendant subjected Plaintiff to adverse employment actions, by ultimately removing her from the USPS position and then finally removing her from the PCORI project.

84. Removing Plaintiff from the USPS position and placing her on the PCORI project was an adverse employment action because the tangible working duties of the PCORI project were significantly different from those of the USPS position.

85. The tangible working duties of the USPS position involved working on Core Java and Java Platform.

86. Plaintiff had over 8 years' experience working with Java.

87. By contrast, tangible working duties for the PCORI project involved working on a completely different platform and technology called Salesforce.

Case 1:18-cv-02414-TNM   Document 39   Filed 10/30/19   Page 11 of 19

88. Plaintiff was also unable to work from home on the PCORI project.

89. By contrast, Plaintiff was able to work from home during the USPS project.

90. Plaintiff was qualified for the job which she was removed from because she had successfully executed the role with no history of negative performance review prior to her supervisor's discriminatory pattern of behavior.

91. As a direct and proximate cause of Defendant's conduct, Plaintiff suffered, and continues to suffer, from harm, injury and monetary damages – including but not limited to past and future loss of income.

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court to;

a. Award compensatory damages as permitted by statute;

b. Award lost wages (back pay/ front pay) with interest;

c. Award of general damages in an amount to be proved at trial;

d. Award reasonable attorney fees, costs, and expenses incurred for this action;

e. Award equitable, declaratory, and injunctive relief;

f. Award of punitive and exemplary damages in a large sum sufficient to make an example of defendant and deter future brazen conducts;

g. Direct Defendant to return Plaintiffs personal property that was improperly seized by Defendant; and

h. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT II.

**Title VII of the Civil Rights Act of 1964, as amended,**

**42 U.S.C. § 2000e,** *et seq.*

**(Employment Discrimination on the Basis of Race, Gender, Color and National Origin).**

92. Plaintiff incorporates by reference paragraphs ¶1-91.

93. Plaintiff is a Black female over 40 years of age and, as such, is a member of a protected class.

94. As a result of Plaintiffs protected status, Plaintiff was treated differently and subjected to disparate treatment in comparison to non-African-American employees that Defendant employed. Defendant knew and by its conduct acquiesced in the supervisor's 'creation' of an all-young-male 'Asian team'.

95. Defendant subjected Plaintiff to an adverse employment actions by forcibly removing her from the USPS project and placing her on the PCORI project, which was a tangibly different set of working conditions given the difference between positions.

96. Plaintiff was also subjected to an adverse employment action when Defendant terminated Plaintiff from employment.

97. Defendant's conduct had a discriminatory impact upon Plaintiff because of her race, gender, color and national origin, depriving her of rights and protections enjoyed by her non-African-American coworkers, such as Kalyan Vuruyyu.

98. As a direct and proximate cause of Defendant's conduct, Plaintiff suffered, and continues to suffer, from harm, injury and monetary damages - including but not limited to past and future loss of income.

99. As a direct and proximate result of defendant's conduct, Plaintiff suffered emotional distress, anxiety causing her to seek and receive medical treatment.

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court to;

    a. Award compensatory damages as permitted by statute;

    b. Award lost wages (back pay *I* front pay) with interest;

    c. Award of general damages in an amount to be proved at trial;

    d. Award reasonable attorney fees, costs, and expenses incurred for this action;

    e. Award equitable, declaratory, and injunctive relief;

    f. Award of punitive and exemplary damages in a large sum sufficient to punish and make an example of defendant and deter future brazen conducts;

    g. Direct Defendant to return Plaintiffs personal property that was improperly seized by Defendant; and

    h. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT III.

### Americans with Disabilities Act, as amended

### 42 U.S.C. § 12101 *et seq.*

### (Employment Discrimination on the Basis of Disability).

100. Plaintiff incorporates by reference paragraphs ¶1-99.

101. At all relevant times, Defendant was a covered entity within the meaning of the Americans with Disabilities Act (ADA).

102. Plaintiff temporarily suffered from severe emotional stress and depression resulting from stress, mistreatment, discrimination, harassment she suffered often and regularly in the course of her employment, abuse, ridicule by her supervisors/managers which substantially limited major life activities during the relevant time period negatively impacting Plaintiffs abilities to function and perform at work and those physical manifestations of her work-place injuries affected her enjoyment of her personal life.

103. Plaintiff sought and received and continued to receive medical/psychological treatment for these conditions and advised Defendant of the state of her health caused by the hostility at work and that her doctor had placed her on disability until released from care.

104. Plaintiff is a qualified individual with a disability. She filed for disability in June 2016 and her disability was approved by Defendant and Cigna.

105. Defendant was aware that Plaintiff was suffering from severe emotional stress and anxiety arising from her work environment and the mistreatments and abuse she received at work at the hands of defendant.

106. Defendant discriminated against Plaintiff by showing intentional indifference during her period of disability in late 2016 despite being aware of the condition.

107. Plaintiff was ultimately terminated by Defendant, while she was out on disability leave pursuant to her doctor's order known to defendant, because of her disability.

108. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues to suffer, from harm, injury and monetary damages- including but not limited to past and future loss of income.

109. As a direct and proximate result of Defendant's conduct, Plaintiff suffered emotional distress, anxiety causing her to seek and receive medical treatment.

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court to;

    a. Award compensatory damages as permitted by statute;

    b. Award lost wages (back pay/ front pay) with interest;

    c. Award of general damages in an amount to be proved at trial;

    d. Award reasonable attorney fees, costs, and expenses incurred for this action;

    e. Award equitable, declaratory, and injunctive relief;

    f. Award of punitive and exemplary damages in a large sum sufficient to make an example of defendant and deter future brazen conducts;

    g. Direct Defendant to return Plaintiffs personal property that was improperly seized by Defendant; and

    h. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT IV.

### Family Medical Leave Act, 29 U.S.C. § 2601, and the

### District of Columbia Family Medical Leave Act, D.C. Code§ 32-501 *et seq.*

110. Plaintiff incorporates by reference paragraphs ¶1-109.

111. Plaintiff was entitled to twelve weeks under federal law and/or sixteen weeks under District of Columbia law as a result of her temporary medical disability.

112. Defendant was required to allow Plaintiff the use of FMLA and/or DCFMLA leave due to her disability and maintain Plaintiffs employment during the period of her disability.

113. Defendant violated FMLA and DCFMLA rights by interfering with Plaintiff's right to take medical leave after she gave notice of intention to do so.

114. Defendant also terminated Plaintiff in violation of the FMLA and the DCFMLA.

115. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues to suffer, from harm, injury and monetary damages - including but not limited to past and future loss of income.

116.     As a direct and proximate result of defendant's conduct as alleged hereinabove, Plaintiff suffered emotional distress, anxiety causing her to seek and receive medical treatment.

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court to;

   a. Award compensatory damages as permitted by statute;

   b. Award lost wages (back pay/ front pay) with interest;

   c. Award of general damages in an amount to be proved at trial;

   d. Award reasonable attorney fees, costs, and expenses incurred for this action;

   e. Award equitable, declaratory, and injunctive relief;

   f. Award of punitive and exemplary damages in a large sum sufficient to make an example of defendant and deter future brazen conducts;

   g. Direct Defendant to return Plaintiffs personal property that was improperly seized by Defendant; and

   h. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT V.

**Family Medical Leave Act, 29 U.S.C. § 2601, and the**

**District of Columbia Family Medical Leave Act, D.C. Code § 32-501 *et seq.***

**(Retaliation).**

117.     Plaintiff incorporates by reference paragraphs ¶1-116.

118.     Plaintiff engaged in FMLA protected activity because she notified the employer of her need for medical leave and doctor's recommendation for such procedures.

119. Defendant was aware of this protected activity because the employer responded in late June of 2016 agreeing with Plaintiff's request for medical leave.

120. Defendant retaliated against Plaintiff when it terminated Plaintiff while she was out on medical leave for treatment related to the injuries she suffered while working at Defendant.

121. Temporal proximity exists between the protected activity and adverse action because Plaintiff was out for medical treatment in November 2016 and was subsequently also terminated on or near November 17, 2016.

122. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues to suffer, from harm, injury and monetary damages - including but not limited to past and future loss of income.

123. As a direct and proximate result of defendant's conduct as alleged hereinabove, Plaintiff suffered emotional distress, anxiety causing her to seek medical treatment.

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court to;

    a. Award compensatory damages as permitted by statute;

    b. Award lost wages (back pay / front pay) with interest;

    c. Award of general damages in an amount to be proved at trial;

    d. Award reasonable attorney fees, costs, and expenses incurred for this action;

    e. Award equitable, declaratory, and injunctive relief;

    f. Award of punitive and exemplary damages in a large sum sufficient to make an example of defendant and deter future brazen conducts;

    g. Direct Defendant to return Plaintiffs personal property that was improperly seized by Defendant; and

h.  Award such other and further relief as this Honorable Court deems just and proper.

## JURY DEMAND

124. Plaintiff demands a trial by jury on all issues set forth herein.

Respectfully submitted,

*Matthew Hunter*

_____
MATTHEW HUNTER
DC Bar No. 1510147
Simply Law, LLC
3 Bethesda Metro Center, Suite 700
Bethesda, MD 20814
T: (202) 630-5123
matthew@simplylawllc.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2019, I caused a true and correct copy of the foregoing to be served via the Court's electronic filing system on the following parties:

Mary M. Lenahan (Bar No. 998721)
WINSTON & STRAWN LLP
1700 K St., NW
Washington, D.C. 20006
Tel: (202) 282-5000
Fax: (202) 282-5100
mlenahan@winston.com

Daniel J. Fazio (*pro hac vice*)
Kara E. Cooper (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600

Fax: (312)558-5700
dfazio@winston.com
kecooper@winston.com
*Counsel for Defendant*

/s/ Matthew Hunter
Matthew Hunter