# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **BREE OMENE**, |
| Plaintiff, |
| v. |
| **ACCENTURE FEDERAL SERVICES**, |
| Defendant. |

Case No. 1:18-cv-02414 (TNM)

## MEMORANDUM OPINION

Bree Omene alleges that her former employer, Accenture Federal Services, subjected her to unlawful discrimination and retaliation. Before the Court is Omene's Third Amended Complaint and Accenture's motion to dismiss it. Earlier, the Court dismissed Omene's Second Amended Complaint but gave her another chance to flesh out her allegations and refine her legal arguments. Yet Omene still has not done enough to satisfy the pleading standards for any claims. She makes only a few new factual allegations and her legal arguments are virtually identical to those she made previously. Indeed, she once again fails to address most of Accenture's arguments for dismissal. The Court will thus grant Accenture's latest motion and dismiss Omene's Third Amended Complaint with prejudice.

**I.**

Omene filed her original Complaint with the aid of counsel. *See* Compl., ECF No. 1. Then, proceeding *pro se*, she sought leave to amend, which the Court granted. *See* First Am. Compl., ECF No. 21. Omene eventually retained her present counsel and again requested leave to amend, which the Court granted. *See* Second Am. Compl., ECF No. 32. Accenture moved to dismiss, as it had with the first two versions of Omene's Complaint. The Court granted

Accenture's motion but decided to give Omene "one more bite at the apple." *Omene v. Accenture Fed. Servs.*, No. 18-cv-2414, 2019 WL 4750276, at *6 (D.D.C. Sept. 30, 2019).

The following factual allegations are common to Omene's Second Amended Complaint and her Third Amended Complaint. *See id.* at *1. Accenture is a business that "performs services on behalf of the federal government." Third Am. Compl. ¶ 8, ECF No. 39. It hired Omene as a software developer specialist in December 2014 and then assigned her to a project for the U.S. Postal Service ("USPS") in June 2015. *Id.* ¶ 14. Her manager for this project was Johnny Wen, an Asian male. *Id.* ¶ 15. Omene is African-American. *Id.* ¶ 16. She did not have a good experience working under Wen. He allegedly complained that Omene was too old, not a man, and not Asian. *Id.* ¶¶ 20, 22. Omene recalls "negative remarks" about the way she spoke and what she ate, "multiple negative comments" about her age, and name-calling. *Id.* ¶¶ 21, 24, 26. Her colleagues, by contrast, apparently got along well with Wen. *Id.* ¶ 25. Omene complained to Accenture about her "negative treatment," but it took no action. *Id.* ¶ 26.

Wen eventually removed Omene from the USPS project, "expressing the belief that [she] was too old." *Id.* ¶ 22. She was 51 years old at the time. *Id.* ¶ 28. Accenture put Omene on a new project called "PCORI." *Id.* ¶ 34.[1] Her supervisors were Basak Gazioglu and Kim Vay. *Id.* ¶¶ 44–46. Omene had a bad experience with them, too. They subjected her to "daily abuse" and "belittled" her. *Id.* ¶¶ 44–45. Omene says they favored her colleagues on the PCORI team, none of whom was African-American or over 50 years old. *Id.* ¶¶ 57–58. One of these colleagues—Kalyan Vuyyuru—"constantly badgered and insulted" Omene. *Id.* ¶¶ 46, 52. When she complained to her supervisors about Vuyyuru's treatment, they told her to "tolerate him because

---

[1] Omene does not say what "PCORI" stands for, nor does she otherwise explain what sort of project this was. *See* Third Am. Compl. ¶¶ 34, 37, 40–41, 43–59.

2

in his culture, men do not obey, respect, or listen to women." *Id.* ¶ 46. Meanwhile, Vay told Omene several times that she intended to replace her. *Id.* ¶ 54. When Omene asked why, Vay "had no answer[] other than 'because I can.'" *Id.* ¶ 55. Omene says that she reported all of this to Human Resources but to no avail. *Id.* ¶¶ 59–60, 62.

Omene alleges that these experiences took a toll on her health, causing stress, anxiety, and pain in her arm and neck. *Id.* ¶¶ 63, 68–69. She went on disability leave, with an "anticipated release date" of January 3, 2017. *Id.* ¶ 70. Her doctor "updated" Accenture in November 2016 about her medical condition. *Id.* ¶ 67. Following that update, and while Omene was still "out on disability," Accenture terminated her employment. *Id.* ¶ 71.

Omene filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") exactly 300 days after her termination. *Id.* ¶ 10. She alleged that Accenture discriminated against her based on "age, race, national origin, and disability, retaliation, and color." *Id.* Ninety days after the EEOC issued a Notice of Right-to-Sue, Omene filed this action. *Id.* ¶ 11.

Omene's Third Amended Complaint raises five counts, all of which appeared in her Second Amended Complaint. *First*, she claims age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"). *Id.* ¶¶ 79–91. *Second*, she alleges discrimination based on race, sex, color, and national origin, under Title VII of the Civil Rights Act of 1964. *Id.* ¶¶ 92–99. *Third*, she raises a claim under the Americans with Disabilities Act ("ADA"). *Id.* ¶¶ 100–09. *Fourth*, she complains that Accenture interfered with her rights under the Family and Medical Leave Act ("FMLA") and its local counterpart ("DCFMLA"). *Id.* ¶¶ 110–16.[2] *Fifth*,

---

[2] "Under the FMLA, a plaintiff may state: (1) an interference claim under [29 U.S.C.] § 2615(a)(1), alleging that her employer has restrained, denied, or interfered with her substantive rights under the Act, and/or (2) a retaliation claim under § 2615(a)(2), alleging that her employer

she alleges that Accenture retaliated against her for exercising her rights under the FMLA and DCFMLA. *Id.* ¶¶ 117–23.[3] The Second Amended Complaint also included a sixth count for "wrongful termination," but Omene abandons that claim here.

The Court dismissed most counts in Omene's Second Amended Complaint as conceded. *Omene*, 2019 WL 4750276, at *2–3. Accenture had pressed several arguments for dismissal of the ADA, FMLA, and DCFMLA claims, and Omene's opposition brief failed to address—let alone rebut—these arguments. *Id.*; *see Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded."). So too with Omene's claims for sex and national origin discrimination under Title VII. *Omene*, 2019 WL 4750276, at *3.

The only counts Omene defended were her ADEA claim and her claim for race discrimination under Title VII. *Id.* She also responded to arguments Accenture had made about "retaliation" and "hostile work environment" claims under the ADEA and Title VII. *Id.* The Second Amended Complaint did not even enumerate these claims. *Id.* But Accenture had addressed them out of an abundance of caution. *See* Mot. to Dismiss Second Am. Compl. at 20, 24–28,[4] ECF No. 34.

---

has taken adverse action against her because she took leave or engaged in activity protected by the Act, such as filing a complaint." *Alford v. Providence Hosp.*, 945 F. Supp. 2d 98, 104 (D.D.C. 2013), *aff'd*, 561 F. App'x 13 (D.C. Cir. 2014). "Claims under the DCFMLA similarly include claims for interference and claims for retaliation." *Id.* at 105. Count V specifies that it is a claim for retaliation, so the Court considers Count IV to be a claim for interference.

[3] The Court has jurisdiction over Omene's claims under 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1367, supplemental jurisdiction.

[4] Page citations are to the page numbers that the CM/ECF system generates.

Omene's age and race discrimination claims failed for several reasons. She had not pled enough facts showing that her transfer to the PCORI project was an adverse employment action. *Omene*, 2019 WL 4750276, at *3–4. And in any event, claims arising from the transfer were time-barred. *Id.* at *4. More, even though Omene's *termination* was an adverse employment action, she failed to make a plausible case that Accenture had dismissed her because of age or race. *Id.* Indeed, "she never mentioned her November 2016 termination in her opposition, focusing instead on her transfer to the PCORI project." *Id.*

For similar reasons, the Court also dismissed any retaliation claims under the ADEA or Title VII. *Id.* at *5. Finally, the Court dismissed any hostile work environment claim under Title VII. *Id.* Accenture had offered four independent arguments for dismissal of this claim, and Omene had responded only to one of them. *Id.* at *5–6. The three unanswered arguments were enough for dismissal, and Omene's sole rebuttal fell short anyway. *Id.* at *6.

Even though Accenture had made "reasonable arguments for dismissal with prejudice," the Court decided to give Omene one more chance. *Id.* The Court recognized that she had been proceeding *pro se* for a period, and her present counsel had limited time before filing the Second Amended Complaint. *Id.* It also seemed apparent that Omene intended to include retaliation or hostile work environment counts, even though she did not enumerate them. *Id.* So the Court gave her a chance to flesh out these claims. *Id.* (citing *Bing v. Architect of the Capitol*, 300 F. Supp. 3d 53, 58–59 (D.D.C. 2017)).

Omene should have gleaned several takeaways from the Court's opinion. To make out any discrimination claims, she would have to focus on her termination and the reasons for it. Failing that, she would have to explain why any claims arising from her transfer to the PCORI project are not time-barred and why this transfer was an adverse action. For her claims under the

5

ADA, FMLA, and DCFMLA, she would at a minimum have to respond to Accenture's arguments for dismissing them. And if she intended to raise retaliation or hostile work environment claims under the ADEA or Title VII, she would at least have to enumerate these counts.

Omene did not do any of this. Her present opposition brief is a near cut-and-paste of her previous opposition brief. *See* Def.'s Reply Ex. A, ECF No. 44-1 (redline comparison). In other words, Omene once again fails to respond to most of Accenture's arguments for dismissal. She makes only a few new factual allegations, and they fail to sustain any of her claims.

The new factual allegations cover six topics. *First*, Omene notes that "her national origin is from the United Kingdom." Third Am. Compl. ¶ 18. *Second*, she claims that Wen falsely accused her of "fraudulently billing hours" during her time on the USPS project. *Id.* ¶¶ 35–36. *Third*, Omene asserts that her duties on the PCORI project were "significantly different" from her duties in the USPS position. *Id.* ¶ 37. The USPS job involved working with Java Platform and Core Java—platforms for which she had over eight years' experience. *Id.* ¶ 38–39. But the PCORI project required her to work with a different platform called Salesforce. *Id.* ¶ 40. More, Omene was unable to work from home while on the PCORI team, even though she could do this when on the USPS project. *Id.* ¶¶ 41–42.

*Fourth*, Omene recounts an incident involving Kalyan Vuyyuru, the co-worker on the PCORI team who "constantly badgered and insulted" her. *Id.* ¶ 46. One night, Omene tried to join Vuyyuru for a cab ride from the worksite. *Id.* ¶¶ 47–48. Vuyyuru apparently said he did not want Omene to travel with him because she was "not [his] class." *Id.* ¶ 49 (alteration in original). She reported the comment to her supervisor, who responded by saying "oh well, it's the Indian culture." *Id.* ¶ 50.

*Fifth*, Omene adds some details about her disability leave. Her doctor informed Accenture that she needed rest before returning to work, and Accenture approved disability leave "during or around June of 2016." *Id.* ¶¶ 64–65. But while she was out on leave, Accenture "disregarded [her] doctor's recommendations and continually burdened [her] with work, deadlines, emails, and phone calls." *Id.* ¶ 66.

*Sixth*, when Omene's EEOC charge was pending, she clarified that she was alleging, in part, age and race discrimination "in the form of hostile comments and disparate treatment." *Id.* ¶ 77. More, she told the EEOC that she "was subjected to retaliation for complaining about disparate treatment and discrimination to Human Resources." *Id.* ¶ 78.

## II.

Accenture moves to dismiss all counts in Omene's Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 7, ECF No. 41-1. This motion is ripe. To survive a Rule 12(b)(6) motion, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet this standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court must "treat the complaint's factual allegations as true and must grant the plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up). But the Court need not credit legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. Assessing plausibility is ultimately a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**III.**

Omene has once again conceded several of her claims by failing to address Accenture's arguments for dismissing them. *See Wannall*, 775 F.3d at 428. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. . . . [A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (cleaned up).

Consider first Omene's claim under the ADA (Count III). She once again neglects to specify whether this claim is for intentional discrimination or failure to accommodate. *See* Third Am. Compl. ¶¶ 100–09. Accenture contends that Omene's allegations fail to support either theory. Def.'s Mem. at 17–18. As it reads her Complaint, there are not enough facts showing that Omene had a "disability," was a "qualified individual," or requested a "reasonable accommodation." *Id.* at 18–20. Omene does not respond to any of these arguments. Indeed, her opposition brief never mentions an ADA claim, let alone the words "disability," "qualified individual," or "reasonable accommodation." *See* Pl.'s Opp'n at 1–7, ECF No. 43. Omene has now twice declined to defend her ADA claim, *see Omene*, 2019 WL 4750276, at *3, so the Court will dismiss it as conceded.

Ditto with Omene's claims under the FMLA and DCFMLA. An "interference" claim under these statutes (Count IV) requires that Omene gave Accenture "adequate notice" of her intention to take leave and that Accenture "denied or otherwise interfered" with her right to take leave. *Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 155 (D.D.C. 2013). In Accenture's view, Omene still has not proffered enough facts showing either "adequate notice" or

"interference." Def.'s Mem. at 21–22. Omene's opposition brief does not address these arguments or even mention her FMLA or DCFMLA claims. *See* Pl.'s Opp'n at 1–7.

To be sure, the Third Amended Complaint contains some new allegations on this subject. Omene's doctor informed Accenture of her need for recuperation, and Accenture approved "disability leave." Third Am. Compl. ¶¶ 64–65. Yet Accenture allegedly "disregarded [the] doctor's recommendations and continually burdened [Omene] with work, deadlines, emails, and phone calls which exacerbated her stress." *Id.* ¶ 66. Accenture urges that these allegations fail to show "adequate notice," since Omene nowhere asserts that her "disability leave" was leave under the FMLA or DCFMLA. Def.'s Mem. at 21. The Court does not put much stock into this "magic words" argument. *See* 29 C.F.R. § 825.303(b) ("When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA.").

But Accenture has other, stronger arguments. Accenture suggests that Omene's allegation in paragraph 66 about "burdening" her is not enough to show "interference" with her right to take FMLA leave. *See* Def.'s Mem. at 21. More, insofar as Omene alleges that her termination was "interference," it is unreasonable to infer that she was on FMLA leave when Accenture dismissed her. *Id.* at 21–22. Omene says her leave began in June 2016 and acknowledges that the FMLA entitles her to 12 weeks of leave and the DCFMLA entitles her to 16 weeks. Third Am. Compl. ¶¶ 65, 111; *see* 29 U.S.C. § 2612(a)(1)(D); D.C. Code § 32-503(a). The date of her termination—November 15—is beyond these entitlements, even if her leave began on June 30.

These arguments for lack of "interference" are well-taken and alone warrant dismissal of Count IV, even if Omene has successfully pleaded "adequate notice." *See Hodges*, 959 F. Supp.

9

2d at 155. Omene does not respond to any of these arguments, so the Court will treat them as conceded and dismiss Count IV.

The crux of a "retaliation" claim under the FMLA or DCFMLA (Count V) is a causal connection between "protected activity" and an adverse employment action. *See Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161–62 (D.C. Cir. 2015). Accenture argues, as it did previously, that Omene's allegations are not enough to make out any causal connection, let alone that she engaged in "protected activity." Def.'s Mem. at 22–25. Once again, Omene declines to address these arguments, so the Court will dismiss Count V as conceded.

Omene also concedes her claim of national origin discrimination under Title VII. She has finally stated her national origin (United Kingdom), but Accenture still maintains that Omene's allegations do not tie her national origin to an adverse employment action. *Id.* at 15–16. Omene does not address this argument. The words "national origin" or "United Kingdom" do not appear in her opposition brief. *See* Pl.'s Opp'n at 1–7. The Court will thus treat this argument as conceded and dismiss the "national origin" portion of Count II.

More, Omene all but concedes her claim of sex discrimination. Title VII plaintiffs must exhaust their administrative remedies before coming to court. *Park v. Howard Univ.*, 71 F.3d 904, 906–07 (D.C. Cir. 1995). So they first have to file a charge with the EEOC. *Id.* at 907. "A Title VII lawsuit following the EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* (cleaned up).

Accenture contends that Omene failed to exhaust her administrative remedies for her sex discrimination claim, since she did not allege that type of discrimination in her EEOC charge. Def.'s Mem. at 16–17. Only one sentence in Omene's opposition brief touches on this argument.

She alludes to a letter "clarifying" that "she was alleging race, gender, and sex discrimination." Pl.'s Opp'n at 7. But this contradicts her operative Complaint. There, Omene references clarifications she made to the EEOC about her "age" and "race" claims, but not her "sex" or "gender" claims. Third Am. Compl. ¶¶ 73–78. Omene cannot use her opposition brief to amend the allegations in her Complaint. *See, e.g.*, *Lawyers' Comm. for 9/11 Inquiry, Inc. v. Wray*, --- F. Supp. 3d ---, ---, No. 19-cv-824, 2020 WL 42845, at *7 (D.D.C. Jan. 3, 2020).[5] Having offered just a "skeletal" (and inadequate) rebuttal to Accenture's exhaustion argument, the Court will treat this argument as conceded and dismiss the sex discrimination portion of Count II. *Schneider*, 412 F.3d at 200 n.1. In any event, Omene's sex and national origin claims fail for other reasons as well—the same reasons that her age and race discrimination claims fail. *See infra*.

Once again, the only claims that Omene defends are her ADEA claim (Count I) and her race discrimination claim under Title VII (Count II).[6] To sustain these claims, Omene must have suffered an "adverse employment action." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). The Court's last opinion discussed two possible adverse actions: Omene's transfer to the PCORI project and her termination. *Omene*, 2019 WL 4750276, at *3–4. It should have been clear from that opinion that Omene was better off focusing on her termination. *See id.* Any

---

[5] Omene did not file the alleged "clarifying" letter anywhere on the docket, so the Court has no way of checking whether the words "sex" or "gender" appear in the letter. All the Court has is a direct contradiction between the Third Amended Complaint and Omene's opposition brief.

[6] Accenture offers identical arguments for dismissing Omene's claims based on "age," "race," and "color." Def.'s Mem. at 12–15. In defending her "race" discrimination claim, Omene does not separately defend her "color" discrimination claim. Pl.'s Opp'n at 4–5. The word "color" does not appear anywhere in her opposition brief. Insofar as Omene alleges a claim based on "color" that is separate from a claim based on "race," the Court will dismiss the former as conceded.

claims arising from her transfer to the PCORI project are time-barred, and it was far from clear that the transfer was an adverse action. *Id.* at *4. Yet Omene again relies exclusively on her transfer to PCORI as the alleged adverse action, failing to develop any argument related to her termination. *See* Pl.'s Opp'n at 4–5.

That was the wrong choice. Any claims arising from the transfer are just as time-barred as they were when the Court addressed this issue five months ago. *Omene*, 2019 WL 4750276, at *4. Nothing in the Third Amended Complaint changes (or attempts to change) that conclusion, and Omene does not mention this subject in her opposition brief. Under Title VII and the ADEA, a plaintiff must file an EEOC charge at most within 300 days of the adverse action. *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA). Accenture placed Omene on the PCORI project in March 2016. Third Am. Compl. ¶ 34. Omene did not file her EEOC charge until September 2017, well over 300 days later. *Id.* ¶ 10. This alone means that Omene fails to plead any viable discrimination claims arising from her transfer (Counts I and II). *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

In any event, Omene also has not shown that her transfer was an "adverse" action, despite some new allegations on this subject. For discrimination claims, an adverse action is "a significant change in employment status, such as hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011). It does not encompass "purely subjective injuries, such as dissatisfaction with a reassignment, public humiliation, or loss of reputation." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (cleaned up).

For the first time, Omene alleges that the USPS project and the PCORI project involved "significantly different" duties. Third Am. Compl. ¶ 37. The USPS position required her to

work on "Core Java and Java Platform," technologies for which she had "over 8 years' experience." *Id.* ¶¶ 38–39. But with PCORI, she had to use a different technology called "Salesforce." *Id.* ¶ 40. More, even though she could work from home on the USPS project, she was "unable" to do this for PCORI. *Id.* ¶¶ 41–42. Omene says her transfer was "akin to a demotion" because "privileges that were afforded to her at the earlier project were taken away without justification at the PCORI project." Pl.'s Opp'n at 5.

The D.C. Circuit has not decided whether inability to work from home is adverse. In an unpublished decision, the court stated that an employer's "denial of [a] request to telecommute" "could constitute adverse employment action[]." *Kline v. Berry*, 404 F. App'x 505, 506 (D.C. Cir. 2010). In *Woodruff v. Peters*, 482 F.3d 521 (D.C. Cir. 2007), the court determined that revocation of a telecommuting accommodation was an adverse action for a retaliation claim. *See id.* at 526, 529. But *Woodruff* is distinguishable. There, the telecommuting privilege was an accommodation the employee had received after suffering a workplace injury. *Id.* at 523. There is no allegation here that Accenture allowed Omene to work from home on the USPS project as an accommodation for an injury or disability.[7]

Meanwhile, judges in this District have repeatedly concluded—even since *Kline*—that a denial of a request to work from home does not by itself amount to an adverse action. *Walker v. McCarthy*, 170 F. Supp. 3d 94, 106–07 (D.D.C. 2016) (collecting cases), *aff'd*, 2017 WL 160806 (D.C. Cir. Jan. 3, 2017). The Court agrees. And here, it is not clear that Omene even lodged a

---

[7] More, the relevant portion of *Woodruff* was about retaliation. The standard for what qualifies as "adverse action" for retaliation differs from the standard for discrimination. For retaliation, an action is "adverse" if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (quoting *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

13

teleworking request that Accenture then denied. Omene merely asserts that she was "unable to work from home on the PCORI project." Third Am. Compl. ¶ 41. Nor does the change from Java to Salesforce add anything. There are not enough facts showing that this change entailed "significantly different responsibilities." *Baird*, 662 F.3d at 1248. Indeed, both Java and Salesforce appear to be technology platforms. *See* Third Am. Compl. ¶¶ 38, 40.[8]

Since Omene fails to plead any viable discrimination claim arising from her transfer to PCORI, that leaves her termination. This *was* an adverse action. *Baird*, 662 F.3d at 1248. But the core of a discrimination claim is that the plaintiff suffered an adverse action because of a protected characteristic. *Baloch*, 550 F.3d at 1196. In Accenture's view, Omene fails to tie her termination to any protected characteristics. Def.'s Mem. at 14. Omene offers no rebuttal. *See* Pl.'s Opp'n at 4–5.[9] The Court will thus treat Accenture's argument as conceded and dismiss any discrimination claims arising from Omene's termination (Counts I and II).

In any event, Accenture is correct. Omene has not plausibly tied her termination to any protected characteristics—whether age, race, national origin, or sex. She alleges unpleasant experiences while working on the PCORI project. Her supervisors, Basak Gazioglu and Kim Vay, subjected her to "daily abuse," "yelled at and belittled" her in front of other employees, and

---

[8] Omene now also alleges that she "was often assigned unreasonable hourly deadlines for large projects on the PCORI project, while her peers were not subjected to such scrutiny and pressure." Third Am. Compl. ¶ 43. This allegation does not alter the calculus, however, because she fails to contrast this aspect of her experience with her experience on the USPS project. Indeed, she elsewhere alleges that she received unfavorable treatment of this sort while on the USPS team. *Id.* ¶ 25 ("By contrast, [Omene] observed Mr. Wen regularly . . . assigning [her colleagues] group projects with favorable return times[.]"). Plus, "purely subjective injuries, such as dissatisfaction with a reassignment," do not amount to adverse action. *Holcomb*, 433 F.3d at 902 (cleaned up).

[9] One sentence in Omene's opposition brief mentions her "dismissal," but she asserts only that the dismissal was an "adverse action." Pl.'s Opp'n at 5. This is not in question.

14

assigned her unreasonable tasks. Third Am. Compl. ¶¶ 44–45. But, as the Court's last opinion explained, Omene does not plausibly tie these actions to any protected characteristics. *Omene*, 2019 WL 4750276, at *4. Nor does she allege that age, race, national origin, or sex were motivating factors behind her termination. *Id.*

Omene's new allegations do not alter this conclusion. She recounts that a co-worker did not want to ride in a cab with her because she was not his "class." Third Am. Compl. ¶¶ 47–49. When she reported the comment, her supervisor responded by saying "oh well, it's the Indian culture." *Id.* ¶ 50. But Omene does not plausibly allege that these events had anything to do with her termination. Indeed, they occurred a full eight months before her dismissal, *id.* ¶¶ 47, 53, so there is not even any temporal proximity that might suggest a connection. *Cf. Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (citing with approval cases holding that three- and four-month gaps are too large to support an inference of causality for retaliation claims). More still, as Accenture reasonably points out, it is not even clear that a comment about Omene's "class" refers to a protected characteristic, as opposed to an unprotected characteristic such as socioeconomic class. Def.'s Mem. at 28.

True, Omene's allegations suggest that Wen sought to remove her from the USPS team based, in part, on her age, race, and sex. Third Am. Compl. ¶¶ 19–22. But she does not allege that he played any role in her termination over eight months later, when she was working on a different project. *Omene*, 2019 WL 4750276, at *4. Omene's failure to tie her termination to any protected characteristics is fatal to all discrimination claims arising from this event (Counts I and II). *See Baloch*, 550 F.3d at 1196. This is reason enough to dismiss these claims, even besides that she concedes them.

The foregoing disposes of all the counts that Omene enumerates in her Complaint. As before, however, her opposition brief alludes to "retaliation" claims under the ADEA and Title VII, and she devotes an entire page to a "hostile work environment" claim under Title VII. Pl.'s Opp'n at 4–7. The Court is loath to entertain these still-unenumerated counts.

One of the reasons the Court gave Omene "one more bite at the apple" was in case she intended to assert these claims. *Omene*, 2019 WL 4750276, at *6. The Court cited *Bing*, where another judge in this District, under similar circumstances, granted a plaintiff "leave to further amend his complaint to include a hostile work environment claim and include factual allegations to support it." 300 F. Supp. 3d at 58–59. Yet the Third Amended Complaint still does not list separate counts for retaliation or hostile work environment. *See* Third Am. Compl. at 10–18. Indeed, in the "Claims" section of the Complaint, *id.*, the word "retaliation" appears only once, in connection with her FMLA and DCFMLA claims (Count V). *Id.* at 16. The words "hostile work environment" do not appear at all. *See id.* at 10–18.[10] This alone is reason to reject any purported hostile work environment or retaliation claims.

Even so, any retaliation claims under the ADEA or Title VII fail for reasons much like those that doomed Omene's discrimination claims. For one, retaliation claims arising from the transfer to PCORI are time-barred because Omene filed her EEOC charge well more than 300 days after the transfer. *Id.* ¶¶ 10, 34; *see* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA).[11]

---

[10] In their briefing, both Accenture and Omene at times refer to a "hostile work environment" claim as a "harassment" claim. Def.'s Mem. at 25–29; Pl.'s Opp'n at 6. But the word "harassment" appears only once in the "Claims" section of the Complaint, as part of the ADA claim (Count III). Third Am. Compl. ¶ 102.

[11] As the Court explained before, the untimely nature of any claims arising from the transfer makes it unnecessary to decide whether the transfer is an adverse action under the standard that

That again leaves Omene's termination as the only potential basis for a claim. Retaliation requires a causal connection between a "protected activity" and the adverse employment action. *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). As Accenture sees it, Omene does not plausibly allege a causal link between any protected activity and her termination, and any protected activity did not occur close enough to her termination to permit an inference of retaliation. Def.'s Mem. at 22–25. Omene does not address these arguments, so the Court will treat them as conceded. This is enough to warrant dismissal of any retaliation claims under the ADEA or Title VII (Counts I and II).

More, the Court agrees with Accenture's arguments on this issue, for the same reasons it gave before. *See Omene*, 2019 WL 4750276, at *5. Omene says she complained to Human Resources about how her supervisors on the PCORI project treated her. Third Am. Compl. ¶ 59. But as discussed, she has not plausibly tied this treatment to any protected characteristics. And she does not specify the contents of her complaints, so the Court cannot reasonably infer whether they qualify as protected activity. The latest complaint to Human Resources that Omene references occurred in either June or July 2016. *Id.* ¶¶ 59, 62. Either way, this was not close enough to her termination in November for the Court to infer a causal link between the two events. *See Clark*, 532 U.S. at 273–74 (citing with approval cases holding that three- and four-month gaps are too large to support an inference of causality). Omene opaquely suggests that she engaged in "protected activity . . . after June 2016," Pl.'s Opp'n at 6, but she specifies no dates that would allow the Court to infer causation.

---

applies to retaliation claims. *Omene*, 2019 WL 4750276, at *3 n.3 (citing *Mogenhan*, 613 F.3d at 1166); *see supra* note 7.

Finally, the Court will dismiss any hostile work environment claim under Title VII. Last time, Accenture offered four distinct arguments for dismissing this claim. *Omene*, 2019 WL 4750276, at *5. *First*, Omene had not alleged conduct severe or pervasive enough. *Second*, Omene did not connect the alleged hostile environment to her protected characteristics. *Third*, she failed to exhaust her administrative remedies because she did not raise this issue in her EEOC charge. *Fourth*, any hostile work environment claim is time-barred because she filed her EEOC charge exactly 300 days after her termination, which occurred while she was on leave. Thus, any instance of workplace harassment necessarily would have occurred more than 300 days before she filed the EEOC charge. Omene responded only to the first of these arguments. *Id.* at *6.

This time, Accenture makes the same four arguments. Def.'s Mem. at 25–30. Omene again responds to the first argument and perhaps (although barely) responds to the second and third arguments. Pl.'s Opp'n at 6–7. She still does not respond to the fourth argument about timeliness, so the Court will treat that one as conceded, which alone warrants dismissal. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 117–18 (holding that a hostile work environment claim is actionable only if the employee files an EEOC charge "within 180 or 300 days of any act that is part of the hostile work environment").

More, for Accenture's first argument, Omene offers the same rebuttal that the Court rejected last time. *See Omene*, 2019 WL 4750276, at *6. A hostile work environment claim requires workplace conduct that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 116 (cleaned up). Omene concedes that "courts in this District have regularly dismissed hostile work environment allegations where the Plaintiff has alleged that she was

18

subjected to yelling or criticism." Pl.'s Opp'n at 6. She insists her case is different because she complained to Human Resources to no avail. *Id.* But while her complaints are relevant to whether Accenture knew about the harassment, they are less salient to the separate issue of whether the harassment was severe enough. *Omene*, 2019 WL 4750276, at *6 (citing *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 189 (D.D.C. 2012)). Omene's failure to allege specific facts showing severe or pervasive harassment is an alternative reason to dismiss any hostile work environment claim under Title VII (Count II). *Id.*

## IV.

Accenture asks the Court to dismiss Omene's Third Amended Complaint with prejudice. Def.'s Mem. at 30. The standard for dismissing a complaint with prejudice is "exacting." *Rudder v. Williams*, 666 F.3d 790, 795 (D.C. Cir. 2012). It is warranted "only when . . . the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Id.* at 794 (cleaned up).

Dismissal with prejudice is the appropriate course here. This is the fourth version of Omene's Complaint, and she filed all but one with the benefit of counsel. Accenture has moved to dismiss each version. So Omene has known Accenture's arguments from the beginning, yet she has been unable to adapt her factual allegations after more than a year of litigation. And when the time came for her first opposition brief, she declined to address—let alone rebut—most of Accenture's arguments. Then the Court weighed in, making it clear that Omene would have to beef up both her factual allegations and her legal arguments if she wanted to get beyond the pleading stage. Yet her Complaint remains lean and her opposition brief remains even leaner.

The Court said it would grant her "one more bite at the apple," *Omene*, 2019 WL 4750276, at *6, and it will stick with that. Omene has had abundant opportunity, time, and

notice.  The Court has no reason to believe that another round would change anything.  The Court will thus grant Accenture's motion and dismiss Omene's Third Amended Complaint with prejudice.  A separate Order will issue.


Dated: March 12, 2020                                                          TREVOR N. McFADDEN, U.S.D.J.